KING & SPALDING LLP
ERIC S. PETTIT, STATE BAR NO. 234657
CRAIG H. BESSENGER, STATE BAR NO. 245787
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310
Email: epettit@kslaw.com
Email: cbessenger@kslaw.com

Attorneys for Plaintiffs
AMTAX Holdings 279, LLC
and AMTAX Holdings 123, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMTAX HOLDINGS 279, LLC, an Ohio limited liability company; and AMTAX HOLDINGS 123, LLC, an Ohio limited liability company, | Case No. **'20 CV 2478 BEN AGS** |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | Trial Date:   None set |
| MONTALVO ASSOCIATES, LLC, a California limited liability company, and AFFORDABLE HOUSING ACCESS, INC., a California corporation, | |
| Defendants. | |

## COMPLAINT

Plaintiffs AMTAX Holdings 279, LLC ("AMTAX 279") and AMTAX Holdings 123, LLC ("AMTAX 123" and, collectively with AMTAX 279, "Plaintiffs") by and through their undersigned counsel, bring this action seeking declaratory relief against Defendant Montalvo Associates, LLC ("Montalvo") and Affordable Housing Access, Inc. ("AHA" and, collectively with Montalvo, "Defendants"), as set forth below.

## NATURE OF THE CASE

1.      AMTAX 279 is the Investor Limited Partner of Lucretia Avenue Partners, L.P. ("Lucretia").  Lucretia is a low-income housing tax credit ("LIHTC") limited partnership that owns an affordable housing development in San Jose, California known as "Villa Solera" (the "Villa Solera Project").  AMTAX 279 contributed virtually all the capital used to develop the Villa Solera Project, totaling more than five million dollars, and holds a 99.99% ownership stake in Lucretia.

2.      AMTAX 123 is the Investor Limited Partner of Evans Lane Apartments L.P. ("Evans Lane" and, collectively with Lucretia, the "Partnerships").  Like Lucretia, Evans Lane is a LIHTC limited partnership that owns an affordable housing development in San Jose, California known as "Las Ventanas" (the "Las Ventanas Project" and, collectively with the Villa Solera Project, the "Projects").  AMTAX 123 contributed virtually all the capital used to develop the Las Ventanas Project, totaling more than sixteen million dollars, and holds a 99.99% ownership stake in Evans Lane.

3.      Montalvo is the Administrative General Partner of both Partnerships. Unlike Plaintiffs, Montalvo did not contribute significant capital to either of the Partnerships, and holds an ownership interest of less than .01% in each of the Partnerships.

4.      A dispute has arisen concerning the parties' rights and obligations in their respective capacities as the Investor Limited Partners and the Administrative General Partners of the two Partnerships.

5.      Plaintiffs have exercised their contractual rights to instruct Montalvo to list

the Projects for sale.  Montalvo, however, has refused to recognize or comply with Plaintiffs' exercise, and instead has used its position of authority and control over the Partnerships to obstruct and interfere with Plaintiffs' contractual rights.

6.     Although Plaintiffs' dispute is primarily with Montalvo, Plaintiffs have also named AHA as a defendant in its capacity as the Managing General Partner of both Partnerships.  Plaintiffs bring this action for declaratory relief in order to confirm their contractual rights and compel Defendants to honor Plaintiffs' valid exercise of those rights.

7.     Pursuant to a Regulatory Agreement and Declaration of Restrictive Covenants recorded on each of the Projects, the Projects will remain affordable housing well past 2050 regardless of who owns them.  Accordingly, the outcome of this dispute will have no impact on the continued operation of the Projects as affordable housing. Instead, Plaintiffs bring this action to enforce their undisputed contractual rights to receive fair market value for their interests in the Partnerships.

## THE PARTIES

8.     Plaintiff AMTAX 279 is an Ohio limited liability company.  As Lucretia's Investor Limited Partner, AMTAX 279 provided virtually all the capital used by Lucretia to fund the development of the Villa Solera Project, and accordingly holds a 99.99% ownership interest in Lucretia.  AMTAX 279's sole member is American Tax Credit Corporate Fund XVIII, LLC, a Delaware limited liability company whose sole member, in turn, is MS Guaranteed Tax Credit Fund I, LLC, a Delaware limited liability company.  MS Guaranteed Tax Credit Fund I, LLC's sole member is MS Managing Member I, LLC, a Delaware limited liability company whose sole member, in turn, is Omena, LLC, a Nevada limited liability company.  Omena, LLC's sole member is Alden Torch Financial LLC ("Alden Torch"), a Delaware limited liability company.  All of Alden Torch's members are citizens of Colorado.  AMTAX 279 is therefore a citizen of Colorado (and no other state).

9.     Plaintiff AMTAX 123 is an Ohio limited liability company.  As Evans

COMPLAINT

Lane's Investor Limited Partner, AMTAX 123 provided virtually all the capital used by Evans Lane to fund the development of the Las Ventanas Project, and accordingly holds a 99.99% ownership interest in Evans Lane.  AMTAX 123's sole member is AMTAX Holdings Corporate Fund (Del.) 31, LLC, a Delaware limited liability company whose two members, in turn, are Tax Credit Holdings III, LLC, a Delaware limited liability company, and GMAC Guaranteed Tax Credit Fund 31, LLC, a Delaware limited liability company.  Tax Credit Holdings III, LLC's sole member is Alden Pacific Holdings, LLC, a Delaware limited liability company whose sole member, in turn, is Alden Torch.  GMAC Guaranteed Tax Credit Fund 31, LLC's sole member is Omena, LLC, a Nevada limited liability company whose sole member is also Alden Torch.  As alleged in Paragraph 8 above, all of Alden Torch's members are citizens of Colorado.  AMTAX 123 is therefore a citizen of Colorado (and no other state).

10.    Defendant Montalvo is the Administrative General Partner for both Partnerships.  Montalvo is a California limited liability company with a principal place of business in San Jose, California.  On information and belief, all of Montalvo's direct and/or indirect members are citizens of California, such that Montalvo is a citizen of California (and no other state).

11.    Defendant AHA is the Managing General Partner for both Partnerships.  AHA is a California nonprofit public benefit corporation with a principal place of business in Newport Beach, California.  Although AHA has delegated its rights and obligations under the Partnership Agreements to Montalvo, AHA is named as a defendant in its capacity as Managing General Partner of both Lucretia and Evans Lane.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiffs are citizens of Colorado, while Defendants are a California limited liability company that, on

COMPLAINT

information and belief, is a citizen of California, and a California nonprofit public benefit corporation that is a citizen of California.

13. Plaintiffs seek declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between Plaintiffs and Defendants.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (a) Defendants are subject to this Court's personal jurisdiction with respect to this action, and (b) the parties "irrevocably" agreed in the limited partnership agreements governing Lucretia and Evans Lane (collectively, the "Partnership Agreements") "that any suit, action or other legal proceeding arising out of this Agreement, any of the Related Agreements or any of the transactions contemplated hereby or thereby *shall* be brought in the court of record of Los Angeles County of the State of California *or the courts of the United States located in the Southern District of California*" (emphases added), and "[w]aive[d] any objection . . . to the laying of venue of any such suit, action or proceeding in any of such courts."

## FACTUAL ALLEGATIONS

### A.   The LIHTC Program

15. Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code, 26 U.S.C. § 42 ("Section 42"), in order to promote private investment in the development of affordable housing.  Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of reductions in the investors' capital accounts and other benefits attendant to their ownership interests.

16. LIHTC investments are typically structured as limited partnerships between an investor limited partner, who provides the necessary capital and typically owns at least 99% of the LIHTC partnership, a special limited partner, who is typically affiliated with the investor limited partner and has certain rights under the partnership

COMPLAINT

agreement, and one or more general partners, who typically own less than 1% of the LIHTC partnership, but earn substantial fees for developing and operating the project.

17.     LIHTC partnerships are subject to a statutory fifteen-year "Compliance Period" under Section 42 during which the LIHTC is earned and/or can be recaptured. Partnership agreements for LIHTC partnerships accordingly often include provisions granting the partners various disposition rights at or near the end of the Compliance Period.

**B.     *The Partnerships***

18.     The Partnerships were both formed in 2002 in order to generate low-income housing tax credits pursuant to Section 42 while at the same time creating new affordable housing in San Jose, California.

19.     Lucretia developed and owns the Villa Solera Project, which is a 100-unit apartment complex located at 1385 Lucretia Avenue in San Jose, California.

20.     Evans Lane developed and owns the Las Ventanas Project, which is a 239-unit apartment complex located at 1848 Evans Lane in San Jose, California.

21.     Both of the Partnerships are comprised of an Investor Limited Partner, a Special Limited Partner, an Administrative General Partner, and a Managing General Partner.

22.     On or about December 9, 2002, AMTAX 279 was admitted as Lucretia's Investor Limited Partner, AMTAX 123 was admitted as Evans Lane's Investor Limited Partner, and Montalvo was admitted as the Administrative General Partner for both Partnerships.

23.     As alleged above, AHA is the Managing General Partner for both Partnerships, but has largely delegated its rights and obligations under the Partnership Agreements to Montalvo.

24.     The Special Limited Partners for Lucretia and Evans Lane are entities affiliated with Plaintiffs and known respectively as Tax Credit Holdings III, LLC and TCH II Pledge Pool, LLC.  The Special Limited Partners do not have any rights or

COMPLAINT

obligations implicated by this action, and accordingly are not named as parties.

25.     As Lucretia's Investor Limited Partner, AMTAX 279 contributed more than five million dollars in capital to fund the development of the Villa Solera Project, and accordingly holds a 99.99% ownership interest in Lucretia.

26.     As Evans Lane's Investor Limited Partner, AMTAX 123 contributed more than sixteen million dollars in capital to fund the development of the Las Ventanas Project, and accordingly holds a 99.99% ownership interest in Evans Lane.

27.     Montalvo contributed only $228 in capital to Lucretia, and $1000 in capital to Evans Lane, and accordingly holds an ownership interest of only .0045% in each of the Partnerships.  Notwithstanding its minimal ownership interest, as Administrative General Partner, Montalvo exerts control over the Partnerships, and earns substantial fees and other economic benefits in exchange for its services.

28.     Based on their respective "placed in service" dates under Section 42, the Compliance Period for Lucretia ended on December 31, 2019, and the Compliance Period for Evans Lane is set to expire on December 31, 2020.

29.     Both of the Projects are subject to extended use restrictions that run with the land and ensure that the Projects will remain affordable housing for several more decades even if the Projects are sold.

### C.     The Partnership Agreements

30.     Lucretia is governed by an Amended and Restated Agreement of Limited Partnership dated as of December 9, 2002, as amended (the "Lucretia LPA"), which is attached hereto as Exhibit "A."

31.     Evans Lane is governed by an Amended and Restated Agreement of Limited Partnership dated as of October 1, 2002, as amended (the "Evans Lane LPA"), which is attached hereto as Exhibit "B."

32.     Except as otherwise alleged herein, the Lucretia LPA and the Evans Lane LPA are substantially identical in all respects material to this dispute, and accordingly are described collectively as the "Partnership Agreements."

33.     Sections 7.4F and 7.4G of the Partnership Agreements recognize Montalvo's fiduciary duties to Plaintiffs in its capacity as the Administrative General Partner of both Partnerships.

34.     Section 7.4 also includes various rights regarding the disposition of Plaintiffs' interests in the Partnerships.

35.     Section 7.4I of the Partnership Agreements, for example, gives the Investor Limited Partner the right "at any time after the completion of the fourteenth year of the compliance period" to require the General Partner to "submit a written request to the Credit Agency to find a Person to acquire the Partnership's interest in the low-income portion of the Project and/or take such other action permitted or required by the Code as the Investor Limited Partner may reasonably request to effect a sale of the Project . . . ."

36.     The reference to a "written request to the Credit Agency" in Section 7.4I relates to a "Qualified Contract" process under Section 42 pursuant to which the state housing agency overseeing the LIHTC project must find a buyer at a price set by statute in order to maintain the affordability restrictions following the end of the Compliance Period.  As alleged further below, Plaintiffs have not asked Montalvo to submit a "Qualified Contract" application, but instead have instructed Montalvo pursuant to the other component of Section 7.4I to "take such other action permitted or required by the Code as the Investor Limited Partner may reasonably request to effect a sale of the Project" with the affordability restrictions in place.

37.     In addition to Plaintiffs' rights under Section 7.4I to compel a sale of the Projects following the fourteenth year of the Compliance Period, Sections 7.4J and 7.4K of the Partnership Agreements permit either Plaintiffs or Montalvo to compel a sale of Plaintiffs' interests during a twenty-four (24) month period commencing at the end of the fifteen (15) year Compliance Period.

38.     Regardless of the method of disposition (i.e., a sale of the Projects or a purchase of Plaintiffs' interests in the Partnerships), Plaintiffs are contractually entitled

COMPLAINT

1  to the fair market value of their interests, without offset for any lack of control over the

2  management of the Partnerships.

3       **D.**    ***Montalvo Refuses to Recognize the Fair Market Value of Plaintiffs'***

4          ***Interests, Forcing Plaintiffs to Exercise Their Forced Sale Rights***

5       39.    Starting in late 2019, Plaintiffs and Montalvo entered into negotiations

6  regarding Montalvo's potential purchase of Plaintiffs' interests in the Partnerships.

7       40.    After months of unproductive negotiations, Montalvo finally provided

8  written notice in July 2020 purporting to exercise its purchase option under Section 7.4J

9  of the Lucretia LPA.

10       41.    Although Montalvo sent a similar notice in connection with Evans Lane,

11  the exercise period under the Evans Lane LPA had not yet commenced, rendering the

12  notice invalid and ineffective.

13       42.    Based on Montalvo's claim that it was exercising its purchase option in

14  connection with Lucretia, AMTAX 279 agreed to participate in an appraisal process

15  required under Section 7.4J to determine the fair market value of AMTAX 279's

16  interests in Lucretia.  When the parties exchanged their appraisals of the Villa Solera

17  Project in August 2020, however, they were more than $20 million apart.

18       43.    The higher fair market value determination reached by AMTAX 279's

19  designated appraiser was generally in line with prior broker's opinions of value

20  ("BOV") that AMTAX 279 had obtained and provided to Montalvo, while the appraisal

21  provided by Montalvo's designated appraiser was barely half that amount.

22       44.    Faced with the fact that the BOV and AMTAX 279's appraisal both

23  indicated a value for AMTAX 279's interests that was higher than Montalvo wanted to

24  pay, Montalvo elected to abandon the appraisal process it had initiated through its

25  purported exercise of its purchase option under Section 7.4J of the Lucretia LPA.

26       45.    Despite *repeated* written requests by AMTAX 279, Montalvo refused to

27  facilitate a discussion between the two designated appraisers so that they could either

28  agree on a value or "jointly appoint a third independent MAI appraiser whose

COMPLAINT

1  determination shall be final and binding" as specifically required under Section 7.4J.  In

2  addition, Montalvo ignored AMTAX 279's request that Montalvo identify appraisers

3  that would be acceptable to Montalvo to perform the third appraisal.

4      46.    After several additional months of unproductive communications with

5  Montalvo, it became clear to Plaintiffs that Montalvo had abandoned the contractual

6  appraisal process for Lucretia, and that the parties would not be able to reach agreement

7  on the fair market value of Plaintiffs' interests in either of the Partnerships.

8      47.    Accordingly, on November 25, 2020, AMTAX 279 and AMTAX 123 each

9  provided written notice to Defendants that they were exercising their rights under

10 Section 7.4I of the Partnership Agreements to instruct Montalvo to list the Projects for

11 sale with a mutually acceptable LIHTC broker.

12      **E.    *Montalvo Refuses to List the Projects for Sale***

13      48.    Rather than complying with its contractual obligation to honor Plaintiffs'

14 request to "effect a sale of the Project[s]" by listing the Projects with a mutually-

15 acceptable LIHTC broker, Montalvo instead had its legal counsel send correspondence

16 that simply referred back to the parties' prior unsuccessful efforts to determine the fair

17 market value of Plaintiffs' interests.

18      49.    Plaintiffs responded by reiterating that Plaintiffs had exercised their forced

19 sale rights under Section 7.4I of the Partnership Agreements, and that Montalvo was

20 required to lists the Projects for sale, but Montalvo is persisting in its refusal to comply

21 with its contractual obligations.

22      50.    Indeed, instead of replying to Plaintiffs' most recent correspondence as

23 Plaintiffs had requested, Montalvo instead filed separate lawsuits against AMTAX 279

24 and AMTAX 123 in Superior Court in the County of Santa Clara, California on

25 December 16, 2020, and notified Plaintiffs' counsel of those lawsuits on December 18,

26 2020.  In doing so, Montalvo violated Section 13.7D of the Partnership Agreements,

27 pursuant to which the parties "irrevocably" agreed "that any suit, action or other legal

28 proceeding arising out of this Agreement, any of the Related Agreements or any of the

COMPLAINT

transactions contemplated hereby or thereby *shall* be brought in the court of record of Los Angeles County of the State of California or the courts of the United States located in the Southern District of California."  (Emphasis added.)

51.    Plaintiffs' forced sale rights under Section 7.4I of the Partnership Agreements are not subject or subordinate to Montalvo's purchase option under Section 7.4J.  Montalvo, moreover, relinquished its right under Section 7.4J of the Lucretia LPA based on its delay and obstruction of the contractual appraisal process, and its right under Section 7.4J of the Evans Lane LPA has not yet ripened.

52.    Given the enormous difference in fair market value reflected in the parties' competing appraisals of the Villa Solera Project, it is abundantly clear that marketing the Projects for sale is the most efficient and accurate way to determine the fair market value of the Projects (and, by extension, the fair market value of Plaintiffs' interests in the Partnerships that own the Projects).

## CAUSES OF ACTION

### Count One (Declaratory Judgment)

### (By AMTAX 279 Against Defendants)

53.    Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph of this Complaint as if set forth herein in full.

54.    Lucretia is the owner of the Villa Solera Project.

55.    AMTAX 279 and Defendants are parties to the Lucretia LPA, which governs their rights and obligations to each other and to Lucretia in their respective capacities as Lucretia's Investor Limited Partner, Administrative General Partner, and Managing General Partner.

56.    The Lucretia LPA is a valid, binding, and enforceable contract.

57.    AMTAX 279 has performed all of its obligations under the Lucretia LPA.

58.    Section 7.4I of the Lucretia LPA gives AMTAX 279 as Investor Limited Partner the right "at any time after the completion of the fourteenth year of the compliance period" to require the General Partner to "submit a written request to the

1  Credit Agency to find a Person to acquire the Partnership's interest in the low-income
2  portion of the [Villa Solera] Project and/or take such other action permitted or required
3  by the Code as the Investor Limited Partner may reasonably request to effect a sale of
4  the [Villa Solera] Project."

5      59.    Lucretia completed the fourteenth year of its Compliance Period on
6  December 31, 2018.

7      60.    On November 25, 2020, AMTAX 279 provided written notice to
8  Defendants that AMTAX 279 was exercising its right under Section 7.4I of the Lucretia
9  LPA to instruct Defendants to list the Villa Solera Project for sale with a mutually
10  acceptable LIHTC broker.

11      61.    Defendants have refused to recognize the validity of AMTAX 279's
12  exercise of its forced sale right under Section 7.4I of the Lucretia LPA or to comply
13  with their contractual obligation to list the Villa Solera Project for sale with a mutually
14  acceptable LIHTC broker and take such other action as AMTAX 279 may reasonably
15  request to effect a sale of the Villa Solera Project.

16      62.    An actual controversy accordingly has arisen and now exists between
17  AMTAX 279, on one hand, and Defendants, on the other, as alleged herein.

18      63.    AMTAX 279 is entitled to a declaratory judgment pursuant to Rule 57 of
19  the Federal Rules of Civil Procedure that AMTAX 279 validly exercised its forced sale
20  right on November 25, 2020, and that Defendants are required under Section 7.4I of the
21  Lucretia LPA to list the Villa Solera Project for sale with a LIHTC broker acceptable to
22  AMTAX 279, and to take such other action as AMTAX 279 may reasonably request to
23  effect a sale of the Villa Solera Project.

## Count Two (Declaratory Judgment)
### (By AMTAX 123 Against Defendants)

26      64.    Plaintiffs repeat and reallege the allegations contained in each and every
27  preceding paragraph of this Complaint as if set forth herein in full.

28      65.    Evans Lane is the owner of the Las Ventanas Project.

COMPLAINT

66.     AMTAX 123 and Defendants are parties to the Evans Lane LPA, which governs their rights and obligations to each other and to Evans Lane in their respective capacities as Evans Lane's Investor Limited Partner, Administrative General Partner, and Managing General Partner.

67.     The Evans Lane LPA is a valid, binding, and enforceable contract.

68.     AMTAX 123 has performed all of its obligations under the Evans Lane LPA.

69.     Section 7.4I of the Evans Lane LPA gives AMTAX 123 as Investor Limited Partner the right "at any time after the completion of the fourteenth year of the compliance period" to require the General Partner to "submit a written request to the Credit Agency to find a Person to acquire the Partnership's interest in the low-income portion of the [Las Ventanas] Project and/or take such other action permitted or required by the Code as the Investor Limited Partner may reasonably request to effect a sale of the [Las Ventanas] Project."

70.     Evans Lane completed the fourteenth year of its Compliance Period on December 31, 2019.

71.     On November 25, 2020, AMTAX 123 provided written notice to Defendants that AMTAX 123 was exercising its right under Section 7.4I of the Evans Lane LPA to instruct Defendants to list the Las Ventanas Project for sale with a mutually acceptable LIHTC broker.

72.     Defendants have refused to recognize the validity of AMTAX 123's exercise of its forced sale right under Section 7.4I of the Evans Lane LPA or to comply with their contractual obligation to list the Las Ventanas Project for sale with a mutually acceptable LIHTC broker and take such other action as AMTAX 123 may reasonably request to effect a sale of the Las Ventanas Project.

73.     An actual controversy accordingly has arisen and now exists between AMTAX 123, on one hand, and Defendants, on the other, as alleged herein.

74.     AMTAX 123 is entitled to a declaratory judgment pursuant to Rule 57 of

the Federal Rules of Civil Procedure that AMTAX 123 validly exercised its forced sale right on November 25, 2020, and that Defendants are required under Section 7.4I of the Evans Lane LPA to list the Las Ventanas Project for sale with a LIHTC broker acceptable to AMTAX 123, and to take such other action as AMTAX 123 may reasonably request to effect a sale of the Las Ventanas Project.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for the following relief:

(a) A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that AMTAX 279 validly exercised its forced sale right on November 25, 2020, and that Defendants are required under Section 7.4I of the Lucretia LPA to list the Villa Solera Project for sale with a LIHTC broker acceptable to AMTAX 279, and to take such other action as AMTAX 279 may reasonably request to effect a sale of the Villa Solera Project;

(b) A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that AMTAX 123 validly exercised its forced sale right on November 25, 2020, and that Defendants are required under Section 7.4I of the Evans Lane LPA to list the Las Ventanas Project for sale with a LIHTC broker acceptable to AMTAX 123, and to take such other action as AMTAX 123 may reasonably request to effect a sale of the Las Ventanas Project;

(c) A speedy hearing pursuant to Rule 57 of the Federal Rules of Civil Procedure;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

1        (d)  For an award of all costs, expenses, and attorneys' fees to the extent

2    permitted by statute, contract, or equitable principles; and

3        (e)  Such other and further relief as the Court may deem just and proper.

4

5      DATED: December 21, 2020        KING & SPALDING LLP
                                        ERIC S. PETTIT

6                                            CRAIG H. BESSENGER

7

8                                  By: */s/Eric S. Pettit*

9                                        ERIC S. PETTIT

10                               Attorneys for Plaintiffs AMTAX Holdings
                            279, LLC and AMTAX Holdings 123,

11                               LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT